# IN THE COURT OF APPEALS OF IOWA

No. 23-0125
Filed May 10, 2023

IN THE INTEREST OF C.J., C.J., N.J., and N.P.-R.,
Minor Children,

C.P., Mother,
       Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Brent Pattison, District

Associate Judge.

        A mother appeals the juvenile court order terminating her parental rights.

**AFFIRMED.**

        Michael A. Horn of Horn Law Offices, Des Moines, for appellant mother.

        Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Ryan R. Gravett, Clive, guardian ad litem for minor children.

        Alexandra Nelissen of Advocate Law PLLC, Clive, attorney for minor child

C.J.

        Erin Romar of Youth Law Center, Des Moines, attorney for minor child C.J.

        Heidi Miller of Gribble Boles Stewart & Witosky Law, Des Moines, attorney

for minor child N.J.


        Considered by Bower, C.J., Badding, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**CARR, Senior Judge.**

A mother appeals the juvenile court order terminating her parental rights. We find termination of the mother's parental rights is supported by clear and convincing evidence, termination is in the children's best interests, none of the exceptions to termination should be applied, and the court properly denied the mother's request to place the children in a guardianship. We affirm the juvenile court's decision terminating the mother's parental rights.

## I.    Background Facts & Proceedings

C.P. is the mother of Ch.J., born in 2010; Ce.J., born in 2011; N.J., born in 2013; and N.P.-R., born in 2019.[1] In an earlier appeal in this case we stated:

> This family came to the attention of the Iowa Department of [Health and] Human Services [(HHS)][2] in March 2021 upon concerns regarding the mother's substance abuse and supervision of the children, as well as the cleanliness and safety of the home. Later that month, the mother presented behavioral indicators of substance abuse in the presence of a social worker, but the mother explained her behavior was a result of Grave's disease, a thyroid condition, which the worker had no reason to disbelieve. The mother had recently refused requests that she and the children be tested for drugs. She was also recently found in her vehicle at a convenience store, asleep at the wheel, with two of the children in the vehicle with her. While law enforcement believed the mother to be impaired, no charges were initiated, although the mother was arrested on unrelated warrants. The mother agreed to a safety plan involving the children staying with the maternal grandmother.
>     In mid-April, a social worker went to the family home, where police were already present in relation to the mother's dog biting a pedestrian. The mother barricaded herself and the youngest child inside of the home. The police officers opined the mother was under the influence of an unknown substance. The officers called a locksmith to facilitate entering the home to arrest the mother, but the mother escaped through a side window with the child in tow. The mother did not respond to communication attempts from the social

---

[1] The father of the three oldest children is M.J. The father of the youngest child is Z.R. The parental rights of the fathers were terminated. They did not appeal.
[2] HHS was formerly known as the Iowa Department of Human Services.

worker to safety plan the child into relative care. When the officers entered the home, they found marijuana. Based on the foregoing and the mother's refusal to cooperate with [HHS], the State sought and obtained an order for temporary removal of all children.

In re C.J., No. 21-1210, 2022 WL 109186, at *1 (Iowa Ct. App. Jan. 12, 2022).

After the children's removal, the mother tested positive for marijuana, and the children tested positive for methamphetamine. *Id.* at *2. The children were adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2021). *Id.* "[T]he mother claimed to be participating in substance-abuse and mental-health treatment, but she refused to sign releases in order to provide DHS with an ability to verify her participation." *Id.* On the mother's appeal, we affirmed the CINA adjudication and removal of the children. *Id.* at *4.

Following a review hearing in November 2021, the court found the mother had a recent sweat patch that was positive for methamphetamine. In addition, the mother indicated that she continued to drink alcohol. On the plus side, the court noted the mother was in substance-abuse and mental-health treatment. Soon after, the mother abruptly left the treatment program.

In January 2022, the State and guardian ad litem (GAL) filed motions seeking to suspend visitation for Ch.J. Ch.J. found a methamphetamine pipe in the mother's home and informed social workers. The child was very upset by the incident and the mother caused further harm by stating the child was lying about the pipe. The court determined Ch.J. could decline to participate in visitation. Subsequently, the mother entered a residential substance-abuse treatment program. The mother also left this program before completing it.

The mother filed a motion for a reasonable efforts hearing. This hearing was combined with a permanency hearing. The court found the mother "struggles to keep her conversations with the children appropriate—and to regulate her own emotions during visits." In addition, the mother continued in a relationship with Z.R., the father of the youngest child, who had problems with sobriety and domestic violence. The court found HHS had engaged in reasonable efforts. The State was directed to file a petition for termination of parental rights.

On July 8, 2022, the State filed a petition seeking termination of the parents' rights. In August the mother tested positive for methamphetamine and cocaine. On the first day of the termination hearing, on September 26, the mother was in a substance-abuse treatment program. She stated she was previously untruthful with the court about her use of methamphetamine and alcohol. The mother testified the children could be placed with her at her treatment program. In the alternative, she asked for the children to be placed in a guardianship.

The hearing continued on October 28. A social worker testified that the mother became "very verbally distraught" during a Zoom visit with three of the children because the fourth child was not present due to illness of the foster parent. The children attempted to get the mother to calm down. The social worker testified she believed the mother would disrupt permanency if a guardianship were put in place for the children. There was evidence that the three oldest children wanted to be returned to the mother's care.

The record was kept open for written arguments and the receipt of some exhibits. The mother was discharged from the substance-abuse treatment program in mid-November. A sweat patch from soon after her discharge was

positive for methamphetamine. The mother requested a hair test and this was also positive for methamphetamine and amphetamines.

The juvenile court entered an order on January 10, 2023, terminating the mother's parental rights under section 232.116(1)(f) (2022) (as to Ch.J., Ce.J., and N.J.) and (h) (as to N.R.). The court found termination of the mother's parental rights was in the children's best interests, finding "[The mother], despite completion of an inpatient treatment program, is still struggling with methamphetamine use." The court found that placing the children in a guardianship would not be in their best interests. The court determined none of the exceptions to termination found in section 232.116(3) should be applied. The mother appeals.

## II.      Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.      Termination of Parental Rights

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third,

we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

**A.** The mother claims there is not sufficient evidence in the record to support termination of her parental rights under section 232.116(1)(f)[3] for the three oldest children and section 232.116(1)(h)[4] for the youngest child. We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015).

The mother asserts that the State had not proven the requirements in sections 232.116(1)(f)(4) and 232.116(1)(h)(4). She contends the children could be returned to her care. Section 232.116(1)(f)(4) and 232.116(1)(h)(4) require a

---

[3] Section 232.116(1)(f) provides that a parent's rights may be terminated if the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[4] Section 232.116(1)(h) provides for termination of parental rights when the court finds:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

showing by clear and convincing evidence that a child "could not be safely returned to the custody of [the child's] parents." *In re S.O.*, 967 N.W.2d 198, 206 (Iowa 2021). Pursuant to section 232.116(1)(f)(4) and 232.116(1)(h)(4), a court considers whether a child can be returned to the parent at the time of the termination hearing. *In re A.B.,* 957 N.W.2d 280, 294 (Iowa 2021).

The mother continued to struggle with substance abuse. Despite her entry into several treatment programs, she tested positive for methamphetamine shortly after completing the latest program. We credit the trial court's careful consideration of the tests and its conclusion the positive tests were evidence of use and not environmental exposure. Additionally, the mother had problems regulating her emotions. The court noted, "[The mother] was so upset [one child] was not participating that she became emotionally dysregulated in front of the children. The older children had to try to calm her down so they could still have a visit with her." Under these circumstances, the children cannot be returned to her custody at the present time. So we conclude there is clear and convincing evidence in the record to support termination of the mother's parental rights.

**B.** The mother claims termination of her parental rights is not in the children's best interests. She points out that the older children advocated to be returned to her care. In considering the best interests of children, we give "primary consideration to the children's safety, to the best placement for furthering the long-term nurturing and growth of the children, and to the physical, mental, and emotional needs of the children under section 232.116(2)." *P.L.,* 778 N.W.2d at 40. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping

someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

In addressing the children's best interests, the juvenile court stated:

> And even though termination will be hard on the children, there are good reasons to believe it is in their long-term best interests. The children are in concurrent plan homes and thriving. They are involved in sports and other prosocial activities. The foster parents and other caregivers make sure the children see each other. All of the caregivers are open to the children maintaining contact with the parents if they are healthy and sober. And the court proceedings have been hard on the children.

We agree with the court's conclusions. The children need stability and permanency, which the mother is not able to provide. While the children are in four different placements, the caregivers make sure the children remain in contact. The children are doing well in these placements. We determine that termination of the mother's parental rights is in the children's best interests.

**C.** The mother states the court could have decided not to terminate her parental rights because the two oldest children were over the age of ten[5] and objected to the termination and there was "clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship." *See* Iowa Code § 232.116(3)(b), (c).

The exceptions to termination found "in section 232.116(3) are permissive, not mandatory." *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021) (citation omitted). "The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique

---

[5] At the time of the termination hearing, Ch.J. was twelve years old and Ce.J. was eleven. Section 232.116(3)(b) would not apply to N.J. and N.P.-R., who were ages nine and two, respectively.

circumstances of each case and the best interests of the children." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3) . . . ." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). The child's best interests remain our first consideration. *Id.* at 475.

While the oldest children were opposed to termination of the mother's parental rights, the court found it was in their best interests to terminate the mother's parental rights. The mother's substance abuse and emotional dysregulation creates more uncertainty for the children. The children needed to know where they were going to be living in the long-term. They were thriving in their current placements. The court did not abuse its discretion in deciding not to forego termination of the mother's parental rights based on the exception found in section 232.116(3)(b).

The court also considered whether termination of the mother's parental rights would be detrimental to the children based on the closeness of their relationship with the mother. *See* Iowa Code § 232.116(3)(c). The court found:

> [T]he harm that would be caused by maintaining [the mother's] parental rights is substantially greater than the harm termination will cause. She is not ready to resume custody of them. If the Court declines to terminate, it will subject the children to custodial limbo for the rest of their minority.

We determine the court properly decided not to forego termination of the mother's parental rights based on the exception found in section 232.116(3)(c), based on the closeness of the parent-child relationship.

The mother additionally contends the court should have decided not to terminate her parental rights and should have placed the children in a guardianship. The juvenile court stated:

> The answer is that guardianship would just lead to more battles over custody of these children in the next few years. [The mother] has sought return of the children at nearly every hearing in the case— even when she was actively using methamphetamine. And her ability to work cooperatively with the guardians is questionable at best. She is certainly better at coordinating with them as opposed to HHS, but once the guardians were required to set limits with her (as HHS has to now), it seems likely that would change. The Court's view is that termination and adoption would better allow the current placements to safely manage contact with the parents. And, finally, after a really turbulent child welfare case, the children need to know where they are going to grow up. Given that termination and adoption are the preferred methods of obtaining permanency for children who cannot be returned to a parental home, the Court finds termination is in the children's best interest.

We concur in the juvenile court's conclusions. "[A] guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Guardianships can be modified or terminated. *See id.* at 477–78 (discussing the practical realities of guardianships); *In re Z.G.*, No. 20-1083, 2020 WL 7383528, at *3 (Iowa Ct. App. Dec. 16, 2020). A guardianship under the circumstances of this case would not be in the children's best interests.

We affirm the juvenile court's decision terminating the mother's parental rights.

**AFFIRMED.**